## GATES & DOWNER *vs.* THE MADISON COUNTY MUTUAL INSURANCE COMPANY.

Where an application, made to an insurance company, for insurance, contained an interrogatory on the part of the company, to be answered by the applicant, in relation to the situation of the property to be insured, in these words, " *How bounded, and distance from other buildings, if less than ten rods, and for what purpose occupied, and by whom ;*" *Held* that such interrogatory called for *all* the buildings within ten rods, and that an answer stating the *nearest* buildings merely—omitting others within that distance, one or more of which was of the most hazardous description—amounted to a withholding, by the applicant, of information called for by the interrogatory, which was material to the risk; and that the omission to furnish that information constituted a good defence to an action on the policy.

Where an applicant for insurance upon his property is inquired of by the assurers as to the situation of his property, he is bound to give a full answer; and if he withholds any information fairly called for, it is at the peril of forfeiting all rights under the policy of insurance. And this, whether the withholding of such information is fraudulent, or not.

Gates *v.* The Madison County Mutual Insurance Company.

ASSUMPSIT on a policy of insurance, tried before GRIDLEY, Circuit Judge, at the Oneida circuit, in April, 1847. The declaration contained two counts, in which the policy, with proposals annexed, and the act of incorporation of the defendants, were set forth at length; and averred that the property insured, a tavern, barn and shed, and store, was consumed by fire, on the 25th of August, 1840, and that notice was afterwards given as required by the policy and the proposals annexed; and that the fire did not originate in any of the cases excepted or excluded from the effect of the policy; with the usual breach on the part of the defendants. The plea was non-assumpsit, with a notice annexed, that the defendants would prove, on the trial, that the tenants and servants of the plaintiffs built and continued a fire amongst the chips near and under the wood-house attached to, and forming a part of the tavern-house and premises, and continued the same two or three days and nights in succession, immediately preceding the destruction of the buildings, and so carelessly and negligently managed and conducted the same, that by such gross carelessness, negligence and misconduct, the buildings insured were burned. On the trial, the plaintiffs produced the application made by them for insurance. It contained, among other things, a marginal note in these words: "*How bounded, and distance from other buildings, if less than ten rods, and for what purpose occupied, and by whom.*" At the right hand of this note a blank had been filled up by the applicants, answering the interrogatory as follows: "The nearest building east is the dwelling house occupied by Charles Eggleston, which is about forty-eight feet; on the north, and about five rods distance, is a shop used in the season of navigation of the canal, for manufacturing setting poles, and on the west, the nearest building to the west end of the barn and shed, is the dwelling house occupied by Benjamin Brazier, which is about 14 feet distance. The tavern stand is occupied at present by Eliphalet Sears." The policy of insurance contained, among other things, the following provisions: "And it is further agreed, that in case the above mentioned premises, buildings, &c. shall at any time, after the making

and during the time this policy would otherwise continue in force so be altered, or be appropriated, applied or used, to or for the purpose of carrying on, or exercising therein, any trade, business or vocation, which according to the condition, class of hazards, or rates hereto annexed, or referred to, would increase the hazard, unless it be by the consent and agreement in writing of this corporation, added to or endorsed upon this policy—then and from thenceforth, so long as the same shall be so appropriated, applied or used, this policy shall cease and be of no force or effect." " And it is also agreed, that this policy is made and accepted subject to and in reference to the terms and conditions of the act of incorporation and by-laws of the company, which are to be used and resorted to, to explain or ascertain the rights and obligations of the parties hereto, in all cases not herein otherwise provided for." Annexed to the policy were printed *proposals* for insurance, signed by the secretary of the company, stating the terms and conditions on which the company would insure houses, buildings, &c. against loss or damage by fire. Among these terms are the following : " Whenever any alterations or additions shall be made to any buildings insured, application may be made to the secretary or agent, who shall certify his opinion, whether the same increase the hazard or not," &c. " The company will make insurance for the term of five years; and the amount of the premium note, or sum to be deposited for the insurance of any building, shall be according to the hazard of such building, or to the danger to which it may be exposed to loss or injury by fire; taking into consideration the material of which it is composed, the manner of its construction, the purpose for which it is used, its situation, and all other circumstances affecting its risk." This last clause was also among the by-laws of the company. The plaintiffs proved the loss of the property insured, and notice thereof to the company. The counsel for the defendants, in opening the defence to the jury, stated that the survey, and the application for the insurance, was made by one of the plaintiffs, Downer, and was in his hand-writing; that Downer was one of the agents of the company, and was possessed of a

Gates v. The Madison County Mutual Insurance Company.

copy of the by-laws, and of the printed forms, and knew all the regulations of the company; that in making the survey, after describing the property in question, he described two contiguous buildings within ten rods of the buildings insured, one on each side, but entirely omitted to mention or describe several other hazardous buildings on both sides of the insured buildings within ten rods, which were there at the time the survey and insurance were made, although he used the printed blanks of the company having a printed memorandum on the margin, requiring such description. That among the buildings omitted to be described within the ten rods of the insured buildings was an extensive building for the manufacture of carriages and sleighs, containing a blacksmith's shop, a wheelwright's shop and a paint shop, which very much increased the hazard or risk of the buildings insured; and if a proper description in this respect had been made, the rate of insurance for the building in question would have been much higher. That previous to the insurance the plaintiffs had made preparation for building a large tavern barn on the premises; some of the boards and other lumber had been brought on the ground; and that soon after the insurance they erected a large barn in rear of, and nearly adjoining the wood house attached to the tavern house, without having made any mention of the same in the survey, and without giving any notice of the same to the assurers at any time afterwards. The counsel also stated that he expected to prove that the buildings were consumed in consequence of the gross carelessness of the tenant. The counsel for the plaintiffs objected to the introduction of the evidence offered, on the ground that the facts stated by the defendants' counsel in his opening, would constitute no defence if proved. But the circuit judge decided that he would receive the evidence, and reserve the question, until he saw how far the evidence went; and he accordingly admitted the evidence, and the plaintiffs' counsel excepted. After the evidence was closed, the counsel for the defendants insisted that inasmuch as it appeared from the testimony that the hazard of the property was much greater than the defendants had reason to expect at the time of making

the insurance, and had since been greatly increased, as a matter of law the plaintiffs were not entitled to recover. The circuit judge remarked that he thought the case of *Burritt* v. *The Saratoga Mutual Insurance Company*, (5 *Hill*, 188,) went the full length of defeating the plaintiffs' right to recover, on the ground that several contiguous and hazardous buildings, within ten rods of the assured buildings at the time of the insurance, were not mentioned or described in the plaintiffs' application for insurance; and that sitting as he then did, at *nisi prius*, he felt bound by that authority. And he ruled that upon the case as it then stood, the plaintiffs were not entitled to recover. The plaintiffs' counsel then suggested that instead of a verdict of the jury for the defendants, the cause take the direction of a nonsuit. And his honor said that it might as well take that direction, and nonsuited the plaintiffs. To which decision the plaintiffs' counsel excepted; and upon a bill of exceptions a motion was now made for a new trial.

*Duane Brown*, for the plaintiffs.

*H. A. Foster & Wm. J. Hough*, for the defendants.

*By the Court*, GRIDLEY, J. Although the application in this case is made a part of the contract, we do not place our decision upon the ground of a breach of warranty. It is true we regard the interrogatory which inquired the distance of the insured premises from other buildings, if less than ten rods, as calling for *all* the buildings within ten rods, although the language of the interrogatory is somewhat different from that employed in the forms in use by several other companies, and upon which the court has passed in several reported cases. It was manifestly the object of the company to ascertain the number of buildings within ten rods, and their distance from the buildings insured. The applicant, who should truly state the distance of the *nearest building*, but wholly omit to state that the latter was adjacent to another of a very hazardous character, as a powder mill, would clearly withhold valuable

information, which, with a prudent officer, would doubtless be decisive against accepting the risk. It is difficult, however, to maintain, that an answer stating the *nearest* buildings, merely, without professing to do more, would amount to a warranty *that there were no other buildings* within the given distance. It *would*, however, amount to the *withholding of information material to the risk*, which was called for by the interrogatory. And that is declared by the court in the case of *Burritt* v. *The Saratoga Mutual Insurance Co.* (5 *Hill*, 191, 192,) to be a defence to an action on the policy.

After stating the rule which prevails in cases of marine insurance, and distinguishing it from that which is applicable to policies of insurance against fire, Judge Bronson says: "It is therefore the practice with companies that insure against fires, to make inquiries of the assured concerning all matters that are material to the risk," and he then adds, "when called on to speak, he is bound to make a *full* and true representation concerning all matters brought to his notice, and any concealment will have the like effect as in case of a marine risk. It is not necessary for the purpose of avoiding the policy, to show that any fraud was intended; it is enough that information material to the risk was required and withheld."

If this be law, then we think that the omission of the plaintiffs to inform the company of several buildings within the distance of ten rods from the premises insured, one or more of which was of the most hazardous description, furnishes a defence to this action.

It is argued that when the company perceived that the answer to the interrogatory was not a full one, its officers might have demanded a further answer, or declined to take the risk. We are unable to say whether the company regarded the answer as a full response to the question or not; at all events, upon the authority of the case above cited, the applicants having been inquired of, were bound to give a full answer, and to withhold no information fairly called for, at the peril of forfeiting all rights under the policy; and this, whether the withholding of such information was fraudulent or not. If this

principle is to be overruled, it must be done by the court of appeals. This is the ground on which the motion for a nonsuit was granted at the circuit, and it is the principle on which we deny the application for a new trial.

New trial denied.

